UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAMAPO VALLEY AMBULANCE CORPS, INC.
et al.,

                              Plaintiffs,

                - against -

TOWN OF RAMAPO and TOWN OF RAMAPO
TOWN BOARD,

                              Defendants.

**OPINION AND ORDER**

22-CV-04047 (PMH)

PHILIP M. HALPERN, United States District Judge:

Ramapo Valley Ambulance Corps, Inc., ("RVAC"), Ronald Spiegal, Susan Speigal, William Ciancaruso, Peter Milo, Susan Milo, Adolph Rivera, and Elizabeth Rivera commenced this action against the Town of Ramapo and Town of Ramapo Town Board (together, "Defendants") on May 17, 2022. (Doc. 1). All plaintiffs except for RVAC voluntarily dismissed their claims against Defendants with prejudice pursuant to Fed. R. Civ. P. 41(a)(1) on June 29, 2022, and were accordingly terminated as plaintiffs in this action. (Doc. 10; Doc. 11; Doc. 14; Doc. 16).

On November 15, 2022, RVAC filed its First Amended Complaint, with permission of the Court, asserting five claims for relief: (1) violation of procedural due process rights pursuant to the Fourteenth Amendment; (2) *Monell* violations; (3) Unfair Business Practices pursuant to state law; (4) violation of equal protection rights pursuant to Fourteenth Amendment; and (5) violation

of substantive due process rights pursuant to Fifth and Fourteenth Amendments.[1] (Doc. 26, "FAC").

Defendants, pursuant to the briefing schedule set by the Court, served their motion to dismiss under Fed. R. Civ. P. 12(b)(6), supporting memorandum of law, declaration and exhibits attached thereto, on December 8, 2022. (Doc. 31; Doc. 32; Doc. 33, "Def. Br."). RVAC served its opposition and supporting declaration on March 8, 2023 (Doc. 35, "Opp."; Doc. 34), and the motion was fully submitted upon the filing of the motion, opposition, and Defendants' reply (Doc. 36, "Reply") on March 20, 2023.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

RVAC is a not-for-profit volunteer ambulance corporation that previously provided emergency medical services in the Town of Ramapo (the "Town"). (FAC ¶¶ 1-3). The Town in 1983 established the Ramapo Ambulance District One (the "Ambulance District") and contracted with multiple ambulance corporations to provide emergency and related ambulance services to residents within the Ambulance District. (*Id.* ¶¶ 18, 22-25).  On June 17, 1983, the Town entered into a publicly funded contract with RVAC to provide emergency medical and related ambulance services within the Ambulance District. (*Id.* ¶ 27, Ex. 1). The Town updated and amended its publicly funded contract with RVAC on January 1, 2001. (*Id.* ¶ 28, Ex. 2) (together with Ex. 1, the "Agreement"). RVAC operated five ambulances and two motorcycle response vehicles which

---

[1] Defendants' briefing includes argument that, to the extent RVAC alleges a First Amendment retaliation claim, that claim for relief should be dismissed. (Def. Br. at 14-16). RVAC confirms in opposition that it has not asserted a cause of action for retaliation in violation of the First Amendment. (Opp. at 18-19). Accordingly, the FAC does not contain a retaliation claim for relief.

allowed its volunteers to "to provide emergency medical care to more than 40,142 residents, over a 34.5 square mile area by answering approximately 3,000 calls a year." (*Id*. ¶ 21).

The Town, in addition to RVAC, contracted with two ambulance corporations (Faist Ambulance Corps ("Faist") and Spring Hill) and two volunteer ambulance corporations (Hatzolah Ambulance Corps ("Hatzolah") and Hatzolah New Square Ambulance Corps ("New Square")) to provide emergency services to separate geographic locations within the Ambulance District. (*Id*. ¶¶ 47, 52). Each geographic location ranged in size based upon call volume. (*Id*. ¶ 51). RVAC alleges that each of these ambulance corporations have entered into a "substantial[ly] similar (if not identical) contract with the Town, including payment terms, requirements and provisions which are nearly identical." (*Id*. ¶ 48). The Town selects how much to fund each ambulance corporation and then collects directly all insurance proceeds from the ambulance corporations' bills. (*Id*. ¶ 49). Each ambulance corporation in the Ambulance District is required to submit the same budget forms for funding and go through the same processes, steps and regulations to receive Town funding. (*Id*. ¶ 51).

RVAC asserts that, despite its diligent performance in its duties, the Town has not been acting diligently and transparently. (*Id*. ¶ 37). RVAC claims that it has been required to meet and abide by additional standards that the other ambulance corporations are not required to, and that it is monitored, controlled, and directed by the Town where the other organizations are not. (*Id*. ¶¶ 55, 67). RVAC further asserts that "systematic measures have been taken by the Town since 2019 to force the closure of [RVAC] and the Town has employed certain unwarranted tactics . . . solely against [RVAC]." (*Id*. ¶ 45). For instance, RVAC alleges that starting in 2020, the Town required it to employ paid crews at all times in order to be dispatched, and imposed reporting requirements in connection therewith. (*Id*. ¶¶ 75-80, 83-84). Additionally, the Town allegedly refused to fund

and pay RVAC but increased funding and support for other ambulance corporations. (*Id*. ¶¶ 104-108). Also, all ambulance corporations except for RVAC were given permission to mark their emergency vehicles with whatever color lights they wanted, regardless of local or state regulations. (*Id*. ¶ 69).

The Agreement between RVAC and the Town includes a provision that "[t]his agreement shall be automatically renewed for additional terms of one (1) year, unless either party shall notify the other, no later than sixty (60) days prior to the end of the term, of its election not to renew." (*Id*., Ex. 2 at p. 5). RVAC asserts that on or about August 16, 2022, the Town terminated its Agreement. (*Id*. ¶ 62). RVAC contends that this termination was undertaken without cause and with intent to punish RVAC, and was arbitrary, capricious, and discriminatory. (*Id*. ¶¶ 43-44).

This litigation followed.

## STANDARD OF REVIEW

### I.   Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

II.   Documents Considered

In deciding a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit.").

Here, Plaintiff attaches the following three documents to its FAC: (i) June 1983 contract between RVAC and the Town (FAC, Ex. 1); (ii) January 2001 contract between RVAC and the Town (*Id*., Ex. 2); and (iii) August 12, 2020 email correspondence with the subject line "Ramapo

Valley Ambulance Dispatch MEMO" (*Id.*, Ex. 3). Accordingly, the Court will consider these documents in connection with the instant motion.

## ANALYSIS

I.    First and Fifth Claims for Relief: Due Process

RVAC's first and fifth claims for relief allege violations of its due process rights. Specifically, RVAC's first claim for relief alleges a violation of its procedural due process rights and its fifth claim for relief alleges a substantive due process violation. The Court analyzes each *seriatim*.

a.    First Claim for Relief: Procedural Due Process Under the Fourteenth Amendment

RVAC's first cause of action alleges a violation of its procedural due process rights. (FAC ¶¶ 109-114). RVAC asserts that the Town's failure to abide by the terms and conditions of the Agreement and ultimate termination of the Agreement without reasonable basis constitutes a violation of its due process rights under the Fourteenth Amendment. (*Id.* ¶ 112).

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that [it] possessed a liberty interest and (2) that the defendant(s) deprived [it] of that interest as a result of insufficient process." *Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *6 (S.D.N.Y. Nov. 19, 2021) (quoting *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020).

As to the first element, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510

(S.D.N.Y. 2012) (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). "Such property interests cannot be found on the face of the Constitution, but rather are created, and their dimensions are defined by, existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits." *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 381 (S.D.N.Y. 2014) (citing *Looney v. Black,* 702 F.3d 701, 706 (2d Cir. 2012)). "[W]hen determining whether a plaintiff has a claim of entitlement, [courts] focus on the applicable statute, contract or regulation that purports to establish it." *Id*. (quoting *Brown v. New York*, 975 F. Supp. 2d 209, 242 (N.D.N.Y. 2013)). However, a plaintiff "must have a legitimate claim of entitlement" to the alleged federally protected property interest. *Davidson Heights LLC v. New York City Hous. Auth.*, No. 14-CV-00930, 2014 WL 5500944, at *4 (S.D.N.Y. Oct. 31, 2014). "An abstract need, desire or unilateral expectation is not enough." *Id*. (citing *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002)).

Here, RVAC's due process claim is "premised on a contract right." (Opp. at 11-13). Specifically, RVAC claims that it "had a legitimate claim of reimbursement and entitlement to the services provided under the [Agreement]." (*Id*.). In other words, RVAC argues that it maintained a property interest in "(1) payment under the [Agreement] and (2) to be treated equally as compared to similarly situated ambulance corporations." (*Id*. at 20). Defendants argue that RVAC does not have a constitutionally protected property interest in the Agreement because it is an "ordinary" or "routine" government contract and was terminable at-will. (Def. Br. at 10). The Court agrees with Defendants.

"The Second Circuit has noted that, 'although a public contract can confer a protectible benefit, not every contract does so.'" *Gizzo*, 44 F. Supp. 3d at 381 (citing *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994)); *see also Walentas v. Lipper*, 862 F.2d 414, 418 (2d

Cir.1988) ("[I]t is relatively clear that a contract dispute, in and of itself, is not sufficient to give rise to a cause of action under section 1983."). Courts in the Second Circuit have found that "ordinary" or "routine" government contracts do not, by themselves, give rise a constitutionally protected property interest.[3] *See Gizzo*, 44 F. Supp. 3d at 385 (collecting cases); *see also Grasson v. Board of Educ. of Orange*, 24 F. Supp. 3d 136, 150 (D. Conn. 2014) ("Courts in the Second Circuit have been reluctant to expand due process protections to ordinary commercial contracts."); *Resource Servs., LLC v. City of Bridgeport*, 590 F. Supp. 2d 347, 358 (D. Conn. 2008) ("The Second Circuit has held that, where a complaint alleges the breach of an ordinary contract, 'the right to payment on such a contract does not rise to the level of a constitutionally protected property interest.'") (citing *Martz*, 22 F.3d at 31)). One characteristic that has been found to distinguish an "ordinary" or "routine" government contract from the type of government contract that gives rise to a protectible property interest is that "the latter protects its holder from the state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both." *Gizzo*, 44 F. Supp. 3d at 385 (emphasis in original). Additionally, courts have afforded "special treatment" to employment contracts in the protected interest analysis. *Id*. at 386.

Here, the Court concludes that the Agreement is sufficiently ordinary and/or routine such that RVAC's property interest in the Agreement is not a property interest that the Due Process clause protects. The Agreement did not protect RVAC from the Town's revocation of a status.

---

[3] *See also Seymour's Boatyard, Inc. v. Town of Huntington*, No. 08-CV-03248, 2009 WL 1514610, at *8 (E.D.N.Y. June 1, 2009); *E. Amherst Plumbing, Inc. v. Thompson*, No. 12-CV-0195A, 2013 WL 5442263, at *4 (W.D.N.Y. Sept. 27, 2013); *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988) ("An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection.").

Nor does RVAC receive special treatment as an employment contract. Rather, the Agreement was the product of a voluntary contractual relationship between RVAC and the Town for the provision of emergency medical services. The Agreement also contained a provision which permitted termination by either party for any reason. (FAC at Ex. 2, ¶ 10). Accordingly, the Court concludes that RVAC's interest in reimbursement and/or the provision of services under the Agreement is not a constitutionally protected property interest. *See i.e. Gizzo*, 44 F. Supp. 3d at 388 ("[T]he Court concludes that Plaintiff's property interest in the [L]icensing Agreement with the City is not a property interest that the Due Process Clause reaches."); *see also Grasson*, 24 F. Supp. 3d at 151 (granting motion to dismiss procedural due process claim where there was no protectible property interest in "a simple commercial contract between the [Orange Board of Education] and an owner/operator of a bus that neither invokes extreme dependence nor permanence."); *Gallagher v. New York City Health & Hosps. Corp.*, No. 16-CV-04389, 2017 WL 4326042, at *2 (S.D.N.Y. Sept. 20, 2017), *aff'd*, 733 F. App'x 3 (2d Cir. 2018) (granting motion to dismiss due process claim "[b]ecause Plaintiffs' employment was at-will, they have no due process property interest in the contract's renewal.").

RVAC asserts in opposition that "[a] written contract such as one in the case at bar, has been found to be strong evidence of entitlement and demonstrates that Plaintiffs have a protectible property interest." (Opp. at 12). However, each of the three cases that RVAC cites to in support— *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994); *Christ Gatzonis Electrical Contractor, Inc. v. New York City School Construction Authority*, 23 F.3d 636 (2d Cir. 1994); and *Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775 (2d Cir. 1991)—was

distinguished by the court in *Gizzo* on the same grounds that are applicable here.[4] 44 F. Supp. 3d at 389. (Opp. at 12-13).

Ultimately, nothing in the FAC or RVAC's briefing demonstrates that the Agreement is more than an "ordinary" or "routine" government contract. RVAC has not cited, and the Court has not found, any case in the Second Circuit which found a protectible property interest based on the type of contract at issue here. Therefore, RVAC has failed to allege a constitutionally protected property interest.

In any event, RVAC fails to meet the second element—deprivation of its interest as a result of insufficient process. Defendants argue that even if RVAC had plausibly alleged a constitutionally protected property interest, "the availability of an opportunity for an Article 78 proceeding or the availability of an ordinary breach of contract action is more than sufficient to satisfy any alleged due process." (Def. Br. at 33). Indeed, RVAC has a breach of contract action currently pending in New York State Supreme Court, Rockland County under Index No: 35744/2021. (Opp. at 5). RVAC does not address this argument regarding the second element in opposition. Accordingly, RVAC's failure to allege insufficient process is an independent basis on which to dismiss the first claim for relief. *See Astoria Gen. Contracting Corp. v. Off. of the Comptroller of the City of New York*, No. 15-CV-01782, 2017 WL 5633314, at *2 (S.D.N.Y. Oct. 31, 2017), *aff'd sub nom.*, 740 F. App'x 747 (2d Cir. 2018) ("Even assuming, *arguendo*, plaintiffs

---

[4] The court in *Gizzo* noted that each of the three cases relied on by Plaintiff involved employment contracts which receive special treatment. 44 F. Supp. 3d at 389. Additionally, the language from *Christ Gatzonis*, which RVAC quotes in opposition (Opp. at 12), derives from an "an earlier Second Circuit case in which the court relied exclusively on a *statute*, not a *contract*, in support of its holding." *Id*. (emphasis in original). Likewise, the holding in *Horowitz* is based only on cases involving statutory, not contractual law. *Id*. Lastly, *Ezekwo* "did not find a property interest arising solely from a contract provision, but rather, it recognized a property interest in the plaintiff's alleged right to a certain important *status*." *Id*. (emphasis in original). The three cases relied on by RVAC are further distinguished in Defendants' reply. (Reply at 6-7).

possessed a constitutionally significant property interest in the withheld payments, the OATH hearing and opportunity for an Article 78 proceeding together satisfy due process."); *see also Sbarra v. Port Auth. of New York & New Jersey*, No.10-CV-08580, 2011 WL 4344078, at *15 (S.D.N.Y. Sept. 9, 2011) ("In other words, plaintiffs' claim is no more than a state law breach of contract action dressed up in federal clothes. . . they have alleged no fact tending to show that they do not have an adequate post-deprivation remedy at state law to redress the breach. And they do have remedies, notably an action for breach of contract.").

Accordingly, RVAC's first claim for violation of procedural due process is dismissed.

    b.  <u>Fifth Claim for Relief: Substantive Due Process Under the Fifth and Fourteenth Amendments</u>

RVAC asserts in its fifth cause of action that it had been singled out by Defendants for arbitrary enforcement of certain mandates and rules in violation of its substantive due process rights under the Fifth and Fourteenth Amendments. (FAC ¶¶ 151-160).

"To state a substantive due process claim, Plaintiff must allege: (1) a valid liberty or property interest, (2) which Defendants infringed in an arbitrary or irrational manner." *Sagaria v. Orange Cty. Jail*, No. 20-CV-02287, 2021 WL 4392422, at *4 (S.D.N.Y. Sept. 24, 2021) (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)).

With respect to the first prong, Defendants reiterate that RVAC failed to allege that it has any constitutionally protected property interest in the Agreement. (Def. Br. at 16). RVAC responds that "it had a legitimate claim of entitlement to (1) payment under the contract and (2) to be treated equally as compared to similarly situated ambulance corporations." (Opp. at 20). However, the Court has already found in the procedural due process context that RVAC does not have a constitutionally protected property interest derived from the Agreement. Accordingly, this claim fails because RVAC has not pled a valid property interest. *See Gizzo*, 44 F. Supp. 3d at 392

(dismissing substantive due process claim where "the Court has already rejected Plaintiff's argument that the Licensing Agreement gave rise to a constitutionally cognizable property interest in the procedural-due-process context.").

Even assuming *arguendo* that RVAC had a constitutionally protected property interest in the Agreement, this claim for relief would be dismissed on a separate basis. RVAC must demonstrate, in order to state a claim for violation of substantive due process, "that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). Defendants argue that the FAC fails to suggest that the Town's alleged conduct "even approaches the shocking the contemporary conscience standard." (Def. Br. at 17). RVAC contends that the Town's actions—namely, the imposition of hurdles and unreasonable requirements upon RVAC which were not imposed on other ambulance corporations, the control over RVAC's billing, collecting payments, tax money, and grants, and the refusal to fund RVAC's operations—especially given the life and death nature of RVAC's services, may fairly be said to shock the contemporary conscience. (Opp. at 21). The Court is not persuaded.

"In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly "brutal and offensive to human dignity. . . ." *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (quoting *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002)). Here, RVAC alleges that the Town "controlled the billing, dispatching, payments, and staffing of RVAC, and, did so in a wholly different and in a discriminatory manner than the way the Town executed its contracts and requirements, as well as, managing relationships with and for the other ambulance corporations servicing the people of Ramapo." (Opp. at 21). This conduct, even in the context of

providing emergency medical services, does not amount to conduct that is so "truly brutal and offensive to human dignity" as to shock the conscience. *See i.e. Doe v. Bedford Central Sch. Dist.*, No. 18-CV-11797, 2019 WL 6498166, at *7 (S.D.N.Y. Dec. 3, 2019) (dismissing plaintiffs' substantive due process claim in a case involving the bullying and subsequent suicide of a minor where the allegations, "even taken as true, fall well short of illustrating official conduct 'truly brutal and offensive to human dignity' that shocks the conscience.").

Accordingly, RVAC's fifth claim for violation of substantive due process is dismissed.

II.    Fourth Claim for Relief: Equal Protection in Violation of Fourteenth Amendment

RVAC's fourth claim for relief alleges that the Town discriminated against RVAC in favor of the other ambulance corporations in violation of the Fourteenth Amendment's Equal Protection clause. (FAC ¶¶ 137-150). Specifically, the FAC alleges that the Town imposed certain mandates exclusively on RVAC which subjected RVAC to additional expenses in an amount which was a "substantial operational and business disadvantage for [RVAC]." (*Id*. ¶ 144).

The Fourteenth Amendment also provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "This provision is essentially a direction that all persons similarly situated should be treated alike." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *4 (S.D.N.Y. Jan. 8, 2021), *aff'd*, 2022 WL 121281 (2d Cir. 2022) (internal quotation marks omitted). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [the Second Circuit] ha[s] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Lopes v. Westchester Cty.*, No. 18-CV-08205, 2020 WL 7029002, at *7 (S.D.N.Y. Nov. 30, 2020) (quoting *Harlen Assocs. v. Inc. Vill. of*

*Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (alterations in original)). A claim for the violation of RVAC's right to equal protection may proceed in two scenarios: (1) selective enforcement; or (2) a class of one. *Id.* at *7 (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013)); *see also Marom v. Town of Greenburgh*, No. 18-CV-07637, 2020 WL 4891339, at *4 (S.D.N.Y. Aug. 19, 2020). RVAC confirms that it is proceeding under a class of one theory. (Opp. at 14-15). To state a class of one claim, RVAC must show different treatment from those similarly situated, and that such treatment lacked a rational basis. *Casciani v. Nesbitt*, 392 Fed. App'x 887, 888 (2d Cir. 2010). The different treatment must be intentional. *33 Seminary LLC v. City of Binghamton*, 670 Fed. App'x 727, 729-30 (2d Cir. 2016) ("[A] plaintiff seeking to bring a non-class-based equal protection claim must show that the defendant 'intentionally treated them differently from other[s] similarly situated.'").

Defendants argue that, "[a]s a government contractor, RVAC's class-of-one equal protection claim is precluded by the Supreme Court's decision in *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 605 (2008) . . . [which] foreclosed class-of-one equal protection claims concerning government decisions in the public employment context." (Def. Br. at 11-12). The *Engquist* Court deemed the class of one theory a "poor fit in the public employment context," because "[t]o treat employees differently is not to classify them in a way that raises equal protection concerns[, but r]ather . . . to simply exercise the broad discretion that typically characterizes the employer-employee relationship." 553 U.S. at 605. "The Second Circuit has found that there may be some circumstances where *Engquist* is properly applied outside of the employment context." *Preschools of Am. (USA), Inc. v. New York City Dep't of Educ.*, No. 17-CV-05027, 2018 WL 4265886, at *6 (S.D.N.Y. Sept. 6, 2018) (citing *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 142 (2d Cir. 2010)). Moreover, a number of courts in the Second Circuit have held that

the Supreme Court's ruling in *Engquist* applies to class of one equal protection claims brought by government contractors. *See Airday v. City of New York*, 131 F. Supp. 3d 174, 185 (S.D.N.Y. 2015) ("Courts within this Circuit also bar "class of one" equal protection claims brought by government contractors."); *see also JAV Auto Center, Inc. v. Behrens*, No. 05-CV-06503, 2008 WL 9392107, at *5 (S.D.N.Y. Oct. 8, 2008), *aff'd sub nom.*, 360 F. App'x 176 (2d Cir. 2009) ("If Plaintiffs were independent contractors providing services to the Authority, *Engquist* would, in my view, plainly apply, because public agencies have the same need for flexibility and discretion in dealing with their contractors as they do with their employees."); *Preschools of Am. (USA), Inc.*, 2018 WL 4265886 at *7 ("The Court thus agrees that the reasoning of *Engquist* fits government contracting nearly as well as it does government employment, and therefore bars the class-of-one equal protection claim brought here.").

RVAC argues in response that its class-of-one equal protection claim is not precluded by *Engquist* because "RVAC is not a government contractor," but rather is in a "simple vendor-vendee contractual relationship" with the Town. (Opp. at 14). Specifically, RVAC contends that it is not a government contractor precluded by *Engquist* because the Agreement was never put out for bid and was negotiated rather than awarded by the Town. (Opp. at 13-14). While the Court is not persuaded that RVAC is not a government contractor,[5] the distinction does not meaningfully change the equal protection analysis under *Engquist*. The pertinent inquiry is whether the government's role is that of a "regulator" or a "proprietor." *See Preschools of Am. (USA), Inc.*, 2018 WL 4265886 at *7. As the court in *JAV Auto Center, Inc.* explained:

> [T]he Court in *Engquist* noted, "there is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the

---

[5] The Court notes that the June 17, 1983 contract between RVAC and the Town, attached to the FAC as Exhibit 1 and incorporated by reference in the FAC, identifies RVAC as "Contractor." (FAC at Ex. 1).

> government acting 'as proprietor, to manage its internal operation.'"
> *Engquist,* 128 S. Ct. at 2151 (quoting *Cafeteria & Rest. Workers v.
> McElroy,* 367 U.S. 886, 896 (1961)). The "class of one" theory
> remains applicable to the former role even after *Engquist.*
>
> *Engquist* provided guidance on determining which role is implicated
> in a given case: "What seems to have been significant in *Olech* and
> the cases on which it relied was the existence of a clear standard
> against which departures, even for a single plaintiff, could be readily
> assessed." *Id.* at 2153. Cases recognizing "class of one" claims
> involved seemingly irrational application of "arm's-length
> regulation." *Id.* at 2154-55. But when the governmental agency
> "exercis[es] discretionary authority based on subjective,
> individualized determinations," *id.* at 2153, "class of one" claims
> are inappropriate. Thus, *Engquist* requires a "class of one" plaintiff
> to "demonstrate that the differential treatment it received resulted
> from non-discretionary state action." *Analytical Diagnostic Labs,
> Inc. v. Kusel,* No. 07-CV-3908, 2008 WL 4222042, at *3 (E.D.N.Y.
> Sept. 15, 2008).

2008 WL 9392107 at *6.

Here, RVAC "entered into a service contract with the Town, a municipal corporation, to

provide emergency medical services and general ambulance services to the Town." (Opp. at 14).

RVAC does not allege that the Town lacked *Engquist's* "discretionary authority based on

subjective, individualized assessments" in imposing mandates and/or rules on RVAC with respect

to its provision of emergency medical services to the Town's residents.[6] Nor does RVAC allege

that the Town lacked discretion to terminate the Agreement at will. Accordingly, the Court

concludes that RVAC's allegations "fall[] clearly on the proprietary side of the 'crucial' divide

between the government 'bring[ing] its sovereign power to bear on citizens at large' and the

government as proprietor." *See Preschools of Am. (USA), Inc.*, 2018 WL 4265886 at *7 (granting

---

[6] Indeed, the email correspondence attached to the FAC as Exhibit 3 demonstrates that the Town imposed
mandates on RVAC "after meetings and discussions between the town officials and RVAC" and in an effort
to "improve[] EMS service to town residents." (FAC at Ex. 3). This email demonstrates that RVAC was
subject to subjective, individualized assessments by the Town regarding its provision of emergency medical
services.

motion to dismiss equal protection claim where plaintiff did not allege that municipal defendant lacked discretionary authority based on subjective, individualized assessments in choosing which vendors to hire); *see also JAV Auto Center Inc.*, 2008 WL 9392107 at *6 (granting motion for summary judgment as to equal protection claim where "[n]o arm's-length regulation or other set of standards exists against which the propriety of the [government entity's] termination decisions can be readily assessed and the [government entity's] discretion is broad and subjective").

Accordingly, the Court finds that *Engquist* applies to bar RVAC's class of one equal protection claim brought here.[7] RVAC's fourth claim for relief is dismissed.

III.   Second Claim for Relief: *Monell* Municipal Liability Claim

RVAC's second claim for relief is brought pursuant to *Monell*. (FAC ¶¶ 115-129). Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'") (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original)). "[T]o prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official

---

[7] "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). Accordingly, "a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id*. In light of the Court's ruling herein, the Court need not determine whether the FAC sufficiently alleges that RVAC is similarly situated to the other identified ambulance corporations and was treated differently. (Def. Br. at 13-14; Opp. at 15-17; Reply at 9-10).

policy of the municipality caused the injury." *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). Such a claim "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)).

Because RVAC fails to plausibly allege a violation of a constitutional right, any *Monell* claim must be dismissed. *See Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) ("Because [the plaintiff] *was* unable to establish an underlying violation of his constitutional rights . . . his . . . *Monell* claim necessarily fail[s] as well."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

RVAC's second claim for relief is, accordingly, dismissed.

IV.     Third Claim for Relief: Unfair Business Practices under State Law

RVAC's third claim for relief asserts a claim for unfair business practices under New York State law, based on Defendants' imposition of "unreasonable and arbitrary restrictions on [RVAC] and creating onerous staffing requirements and failures to pay [RVAC] for its services, while not imposing and creating such hardships for and on other similarly situated ambulance corps." (FAC ¶ 131). The Court declines to exercise jurisdiction of this pendent state law claim because RVAC's federal claims have been dismissed. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 n.6 (2d Cir. 2017) ("a district court may decline to exercise supplemental jurisdiction over state and local law claims if it has dismissed all claims over which it has original jurisdiction."); *Jones*

*v. Westchester Cnty.*, No. 20-CV-08542, 2022 WL 1406591, at *6 n.7 (S.D.N.Y. May 4, 2022) ("[B]ecause the Court declines to exercise jurisdiction over [RVAC's] state law claim[], the Court need not and does not reach Defendants' substantive arguments for dismissal of [that claim].").

Accordingly, RVAC's third claim for relief is dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The first, second, fourth and fifth claims for relief are dismissed with prejudice. The Court declines to exercise jurisdiction over the third claim for relief and dismisses same without prejudice.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 31 and close this case.

**SO ORDERED:**

Dated:    White Plains, New York
          December 28, 2023

_____
PHILIP M. HALPERN
United States District Judge